IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MAIN DRUG, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:05-CV-292-F |
| | ) | (WO) |
| AETNA U.S. HEALTHCARE, INC. and | ) | |
| AETNA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, an independently owned pharmacy, brought suit in the Circuit Court of Bullock County, Alabama on behalf of itself and all similarly situated parties against the Defendant insurance companies/pharmacy benefit management companies for failure to reimburse Plaintiffs according to an agreed-upon formula for brand name prescriptions dispensed to Defendants' insureds. Defendants removed this case to federal court on March 30, 2005, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), as well as federal question jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C.§ 1001, *et. seq.* (ERISA). On April 29, 2005, Plaintiff filed a Motion to Remand (Doc. #10). In that Motion, which is presently before this Court, Plaintiff argues that the amount in controversy in this case is insufficient to authorize the Court to exercise jurisdiction over this case pursuant to 28 U.S.C. § 1332, that CAFA does not apply, and that this dispute is not governed by ERISA.

## I. JURISDICTION AND REMAND STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen*, 511 U.S. at 377.

Federal district courts have federal question jurisdiction over civil actions that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Additionally, federal district courts have jurisdiction over civil actions in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the amount in controversy exceeds $75,000. *Id.* Additionally, President George W. Bush signed the Class Action Fairness Act of 2005 into law on February 18, 2005. The CAFA expands federal jurisdiction over interstate class actions and specifically amended 28 U.S.C. § 1332 to give federal district courts diversity jurisdiction over class actions where at least one member of the plaintiff class is a citizen of a different state from any defendant and the total amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(1).

When a case is originally filed in state court, a party may remove it if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). However, the

non-moving party may move for remand, which will be granted if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c).

## II. FACTS

On June 11, 1999, Plaintiff Main Drug, Inc. ("Main Drug") entered into an agreement (entitled "Amendment to the Pharmacy Agreement") with the Defendants whereby Main Drug would dispense prescription medications to Defendants' insureds/members. That agreement provides as follows with regard to reimbursement for filling of name brand prescriptions:

> Pharmacy agrees to accept the following Reimbursement Rate for services, based on Cost of the actual package or bottle size used to fill the prescription, rendered to members under the Program in accordance with the following: The Reimbursement Rate for each prescription drug dispensed shall be equal to the lesser of: (i) the Ingredient Cost (as hereinafter defined) of such prescription drug, plus a professional fee as agreed upon by the parties and set forth in Section E below; or (ii) the Usual and Customary Retail price. Pharmacy agrees to submit its Usual and Customary Retail Price to Company's designated claims processor.
>
> For Brand Name and Generic Drugs the Ingredient Cost shall be equal to the lesser of (i) for Multi-Source Generic Drugs as set forth in the Company MAC, or (ii) for Brand Name Drugs and Generic Drugs not defined in the Company MAC, the Average Wholesale Price minus the discount as set forth in Section E below.

The Average Wholesale Price ("AWP") is the price that pharmacies pay to a medication's manufacturer or distributor for that medication. AWP is electronically updated by the manufacturer or distributor on a daily basis and is reported to pharmacies, insurance

companies, pharmacy benefit managers and for-the-public publications. Main Drug alleges that, despite having access to AWP information, the Defendants deliberately refused to reimburse it for the full amount of the AWP as agreed. Main Drug alleges that this was part of an intentional plan to defraud pharmacies and customers and increase the Defendants' profits.

Main Drug brings claims for misrepresentation/suppression, breach of contract, unjust enrichment, and conspiracy, requesting monetary and injunctive relief. It also brings this action as a nationwide class action pursuant to Alabama Rule of Civil Procedure 23(b)(3), specifically defining the class as follows:

> all independently owned pharmacies who entered into a contract with Aetna U.S. Healthcare on or after February 9, 1999; but excluding (1) independently owned pharmacies who are currently in bankruptcy; (2) independently owned pharmacies whose obligations to Aetna U.S.Healthcare have been modified or discharged in bankruptcy; (3) any governmental agency or entity and (4) any person or entity who, in accordance with any court approved notice, properly executes and submits a timely request for exclusion from the class.

Main Drug is a citizen of Alabama. Defendants are Pennsylvania corporations not licensed to do business in Alabama with their principle places of business in Connecticut. Additionally, Main Drug's Complaint specifically states that

> Plaintiff, individually and on behalf of the putative class, makes no claims pursuant to federal law and further makes no claims which would give rise to any federal cause of action. Plaintiff's claims are based solely upon applicable state law. Additionally, Plaintiff, on behalf of itself and putative class members, does not make any claim for relief, including both equitable relief and monetary damages, in excess of $74,500.00 in the aggregate for

>each plaintiff or class member. Under no circumstances would the total amount of relief, including both equitable relief and monetary damages, exceed $74,500.00 in the aggregate for each plaintiff or class member. Even if Plaintiff and class members recovered under each count of the complaint, the total recovery for Plaintiff and putative class members would not exceed $74,500 in the aggregate for each plaintiff or class member.

The complaint in this case was filed on February 9, 2005, in the Circuit Court of Bullock County, Alabama. However, instead of filing summonses with the Complaint, Plaintiff's attorney included a letter to the Clerk from his legal assistant indicating that she had not prepared summonses at that time but hoped to have them to the Clerk later in the week. The summonses were filed on February 28, 2005, and served by the Clerk via certified mail that same day.

### III. DISCUSSION

*A. ERISA Preemption*

Defendants allege that this Court has jurisdiction over the present action because ERISA preempts all of Plaintiff's state law claims. The Court finds that at this time there is insufficient evidence that this case involves an ERISA plan. If the Court grants the Plaintiff's Motion to Remand and if during the course of the state action it becomes evident that an ERISA plan is involved, the Defendants may then request that the case be removed on the basis of ERISA preemption. *See, e.g., In Re Loudermilch,* 158 F.3d 1143 (11th Cir. 1998).

*B. Applicability of CAFA*

CAFA was enacted on February 18, 2005. Section 9 of CAFA provides that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." Pub. L. 109-2, § 9. Plaintiff argues that the filing of the Complaint on February 9, 2005 constituted commencement of the action, and that therefore CAFA does not apply because the action was commenced prior to its enactment. Defendants assert that the action was commenced on February 28, 2005, the date on which the summonses were filed and served, and that therefore CAFA applies.

CAFA does not define when an action is "commenced" for purposes of its application. The Ninth and Tenth Circuits, as well as a number of district courts, have held that under CAFA, an action that began in state court and was removed to federal court commenced at the time it was commenced in state court, not at the time it was removed to federal court. *See Bush v. Cheaptickets, Inc.*, No. 05-55995, 2005 WL 2456926 (9th Cir. Oct. 6, 2005); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090 (10th Cir. 2005). Generally, what constitutes commencement of an action in state court is determined by that state's own laws and rules of procedure. *See Herb v. Pitcairn*, 324 U.S. 117, 120, 65 S.Ct. 459, 89 L.Ed. 789 (1945)(stating that "[w]hether any case is pending in the Illinois courts is determined by Illinois law); *Bush*, 2005 WL 2456926 (stating that "[a] state's own laws and rules of procedure determine when a dispute may be deemed a cognizable legal action in state court"). Moreover, in the specific context of cases removed from state court, federal courts have held that the meaning of the term "commencement" is determined by state court rules. *See, e.g., Perez v. General Packer, Inc.*, 790 F. Supp. 1464, 1469 (C.D. Cal. 1992)(finding

6

that the meaning of "commencement" in 28 U.S.C. § 1446(b), which provides that a case may not be removed "more than 1 year after commencement of the action," is controlled by state law). Therefore, the Court must look to Alabama law to determine when the present action was commenced.

Alabama Rule of Civil Procedure 3(a) provides that "[a] civil action is commenced by filing a complaint with the court.." However, mere filing of the complaint does not constitute commencement of an action in all cases. In the context of determining whether an action has been commenced within the statute of limitations, the filing of the complaint commences the action only if it is filed "with the *bona fide* intention of having it immediately served." *Ward v. Saben Appliance Co.*, 391 So. 2d 1030, 1035 (Ala. 1980). In *Ward*, appellant's attorney filed the complaint but directed the clerk of the court to withhold personal service until he could further investigate the case. Appellees were eventually served approximately four months later. The court held that the action was not commenced upon filing of the complaint because the appellant did not file the complaint with the intention of having it immediately served. *See also Finkelstein v. Lovell*, 449 So. 2d 1240 (Ala. 1984)(holding that the action had not been commenced on the date the complaint was filed where the last page of the complaint stated "NO SERVICE TO BE MADE AT THIS TIME" but the clerk did not actually hold up service); *Freer v. Potter*, 413 So. 2d 1079 (Ala. 1982)(holding that filing of the complaint did not commence the action where the plaintiff filed the complaint but ordered the clerk to withhold service of process). If the complaint is filed but the plaintiff's failure to take a particular action prevents the clerk from immediately

beginning the process of service, the filing of the compliant does not constitute commencement of the action for the purpose of the statute of limitations. *See Pettibone Crane Co., Inc. v. Foster*, 485 So. 2d 712 (Ala. 1986)(holding that the action was not commenced upon filing of the complaint where the plaintiff did not provide the defendant's address nor any instructions regarding service of process); *De-Gas, Inc. v. Midland Resources*, 470 So. 2d 1218 (Ala. 1985)(holding that filing of the complaint did not commence the action where the plaintiff failed to pay the filing fee or seek permission to proceed without paying the fee).

Plaintiff asserts that the "*bona fide* intention" standard applies only when determining commencement for the purpose of the statute of limitations. While Alabama courts have applied the standard only in that context, the United States District Court for the Northern District of Alabama, in an en banc opinion, looked to Alabama law to determine the meaning of "commencement" in 28 U.S.C. § 1446(b)[1] and applied the same "*bona fide* intention" standard. The district court held that the "one-year period does not begin to run until the complaint has been filed and there has been a *bona fide* effort to have it served." *Greer v. Skilcraft*, 704 F. Supp. 1570, 1583 (N.D. Ala. 1989)(en banc).

The Court finds that the same standard should also be applied when determining the meaning of "commenced" in Section 9 of CAFA. Therefore, the question is whether when Plaintiff filed the complaint it had the *bona fide* intention that it be immediately served.

---

[1] 28 U.S.C. § 1446(b) provides that a case may not be removed "more than 1 year after commencement of the action."
8

When the "circuit clerk could not have immediately begun the process of service . . . [v]iewed objectively, the actions of the plaintiff fail[ed] to indicate a bona fide intent, at the time of filing, to proceed with the action." *Pettibone*, 485 So. 2d at 714.  Here, the Plaintiff filed the complaint with the clerk's office on February 9, 2005, but did not provide summonses for the Defendants until February 28, 2005.  The affidavit of Wilbert M. Jernigan, the Clerk of the Circuit Court of Bullock County, Alabama, states that before a summons can be issued and a complaint can be served in a civil action, the plaintiff must file with the clerk's office "sufficient properly completed copies of the summons to be issued and served." Jernigan Aff. at 1.  Thus, without copies of the summons, the clerk could not have immediately begun the process of service.  Therefore, by intentionally not filing the summons along with the complaint, the Plaintiff objectively failed to show a *bona fide* intent to proceed with the action.  So, for the purpose of CAFA, the action was not "commenced" until February 28, 2005 when the Plaintiff filed the summonses with the clerk.  Since CAFA was enacted on February 18, 2005, the present action was commenced after CAFA's enactment and therefore CAFA applies.

*C. Amount in Controversy*

Having determined that CAFA applies, the Court must now decide whether CAFA's amount in controversy requirement has been met.  CAFA provides that the "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds

9

the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

At this time, the Court has insufficient information to determine whether CAFA's amount in controversy requirement has been met. Therefore, it is hereby ORDERED that on or before January 13, 2006 Plaintiff shall file a brief specifically addressing which party bears the burden of demonstrating that federal jurisdiction exists. That is, Plaintiff shall address whether the party requesting removal must prove that the amount in controversy requirement is satisfied or whether the party opposing removal must prove that the amount in controversy requirement has not been satisfied. In addition, Plaintiff shall provide specific evidence supporting its assertion that the amount in controversy is less than $5,000,000. On or before February 3, 2006, Defendants shall file a reply addressing the same burden of proof issue and specifying why it believes the amount in controversy exceeds $5,000,000.[2]

DONE this 14th day of December, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Court is aware that both sides have already addressed the burden of proof - Defendant in its Notice of Filing Supplemental Authority in Opposition to Plaintiff Main Drug's Motion to Remand (Doc. # 29) and Plaintiff in its Response to Defendants' Notice of Supplemental Authority (Doc. # 30). However, as the law appears to be unsettled in this area, the Court is requesting additional argument on this issue.