IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAIN DRUG, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:05-CV-292-MEF |
| ) | (WO) |
| AETNA U.S. HEALTHCARE, INC. and ) | |
| AETNA, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, an independently owned pharmacy, brought suit in the Circuit Court of Bullock County, Alabama on behalf of itself and all similarly situated parties against the Defendant insurance companies/pharmacy benefit management companies for failure to reimburse Plaintiffs according to an agreed-upon formula for brand name prescriptions dispensed to Defendants' insureds. Defendants removed this case to federal court on March 30, 2005, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), as well as federal question jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C.§ 1001, *et. seq.* (ERISA). On April 29, 2005, Plaintiff filed a Motion to Remand (Doc. #10). In that Motion, Plaintiff argues that the amount in controversy in this case is insufficient to authorize the Court to exercise jurisdiction over this case pursuant to 28 U.S.C. § 1332, that CAFA does not apply, and that this dispute is not governed by ERISA. On December 14, 2005, this Court entered an Order (Doc. # 32) finding that (1) there was insufficient evidence that

removal is warranted on the basis of ERISA preemption and (2) this action was commenced after the enactment of CAFA, and therefore CAFA applies. CAFA requires both diversity of citizenship and that the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). The parties do not dispute that the diversity of citizenship requirement has been met, but there is a question as to whether the amount in controversy exceeds $5,000,000. In its December 14, 2005 Order, the Court ordered additional briefing on the amount in controversy issue. Upon consideration of the additional information filed by both parties, for the reasons set forth below, the Court finds that the amount in controversy exceeds $5,000,000 and that therefore the Motion to Remand (Doc. # 10) is due to be DENIED.

## I. JURISDICTION AND REMAND STANDARD

As stated in the December 14, 2005 Order, federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen*, 511 U.S. at 377. CAFA gives federal district courts jurisdiction over class actions where at least one member of the plaintiff class is a citizen of a different state from any defendant and the total amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(1).

2

When a case is originally filed in state court, a party may remove it if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). However, the non-moving party may move for remand, which will be granted if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c).

## II. FACTS

On June 11, 1999, Plaintiff Main Drug, Inc. ("Main Drug") entered into an agreement (entitled "Amendment to the Pharmacy Agreement") with the Defendants whereby Main Drug would dispense prescription medications to Defendants' insureds/members. That agreement provides as follows with regard to reimbursement for filling of name brand prescriptions:

> Pharmacy agrees to accept the following Reimbursement Rate for services, based on Cost of the actual package or bottle size used to fill the prescription, rendered to members under the Program in accordance with the following: The Reimbursement Rate for each prescription drug dispensed shall be equal to the lesser of: (i) the Ingredient Cost (as hereinafter defined) of such prescription drug, plus a professional fee as agreed upon by the parties and set forth in Section E below; or (ii) the Usual and Customary Retail price. Pharmacy agrees to submit its Usual and Customary Retail Price to Company's designated claims processor.
>
> For Brand Name and Generic Drugs the Ingredient Cost shall be equal to the lesser of (i) for Multi-Source Generic Drugs as set forth in the Company MAC, or (ii) for Brand Name Drugs and Generic Drugs not defined in the Company MAC, the Average Wholesale Price minus the discount as set forth in Section E below.

The Average Wholesale Price ("AWP") is the price that pharmacies pay to a medication's manufacturer or distributor for that medication. AWP is electronically updated by the manufacturer or distributor on a daily basis and is reported to pharmacies, insurance companies, pharmacy benefit managers and for-the-public publications. Main Drug alleges that, despite having access to AWP information, the Defendants deliberately refused to reimburse it for the full amount of the AWP as agreed. Main Drug alleges that this was part of an intentional plan to defraud pharmacies and customers and increase the Defendants' profits.

Main Drug brings claims for misrepresentation/suppression, breach of contract, unjust enrichment, and conspiracy. It is requesting monetary compensation for the difference between AWP and the amount actually reimbursed, punitive damages, and injunctive relief. It also brings this action as a nationwide class action pursuant to Alabama Rule of Civil Procedure 23(b)(3), specifically defining the class as follows:

> all independently owned pharmacies who entered into a contract with Aetna U.S. Healthcare on or after February 9, 1999; but excluding (1) independently owned pharmacies who are currently in bankruptcy; (2) independently owned pharmacies whose obligations to Aetna U.S.Healthcare have been modified or discharged in bankruptcy; (3) any governmental agency or entity and (4) any person or entity who, in accordance with any court approved notice, properly executes and submits a timely request for exclusion from the class.

Main Drug is a citizen of Alabama. Defendants are Pennsylvania corporations not licensed to do business in Alabama with their principle places of business in Connecticut.

Additionally, Main Drug's Complaint specifically states that

> Plaintiff, individually and on behalf of the putative class, makes no claims pursuant to federal law and further makes no claims which would give rise to any federal cause of action. Plaintiff's claims are based solely upon applicable state law. Additionally, Plaintiff, on behalf of itself and putative class members, does not make any claim for relief, including both equitable relief and monetary damages, in excess of $74,500.00 in the aggregate for each plaintiff or class member. Under no circumstances would the total amount of relief, including both equitable relief and monetary damages, exceed $74,500.00 in the aggregate for each plaintiff or class member. Even if Plaintiff and class members recovered under each count of the complaint, the total recovery for Plaintiff and putative class members would not exceed $74,500 in the aggregate for each plaintiff or class member.

### III. DISCUSSION

In its December 14, 2005 Order, the Court requested (1) briefing on which party bears the burden of demonstrating that federal jurisdiction exists and (2) specific evidence from each party supporting its assertion that the amount in controversy does or does not exceed $5,000,000. The Court will now address each of these issues in turn.

*A.    Burden of Demonstrating Amount in Controversy*

In the typical case invoking federal diversity jurisdiction under 28 U.S.C. § 1332(a), the party asserting federal jurisdiction bears the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L.Ed. 1135 (1936). When the plaintiff files suit in state court, "[t]he defendant can remove to federal court if he can show, *by a preponderance of the evidence*, facts supporting jurisdiction." *Burns*, 31 F.3d at 1094 (emphasis added). That is, the defendant must show

5

by a preponderance of the evidence that the amount in controversy has been met.[1]

The Court recognizes, however, that a number of courts have concluded that CAFA shifts the burden to the plaintiff to prove that the amount in controversy has not been met, and that therefore federal jurisdiction does not exist. *See, e.g., Waitt v. Merck & Co.*, No. C05-0759L, 2005 WL 1799740 (W.D. Wash. July 27, 2005); *Yeroushalami v. Blockbuster, Inc.*, No. CV 05-225-AHM(RCX), 2005 WL 2083008 (C.D. Cal. July 11, 2005). Though the text of CAFA makes no mention of the burden of proof, these courts base their conclusion that CAFA shifts the burden on a report of the Senate Committee on the Judiciary. The report states that

> [i]f a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.

S. Rep. 109-14 at 42-44 (2005). While courts may look to legislative history in interpreting ambiguous statutory language, this particular report does not correspond to any new statutory language. The Seventh Circuit held that this legislative history alone, absent statutory language, cannot alter the longstanding rule placing the burden on defendant to show jurisdiction. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir.

---

[1] The parties do not dispute that this is the traditional burden of proof.

2005)(citing *Pierce v. Underwood*, 487 U.S. 522, 566-68, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988)). This is consistent with the Eleventh Circuit's views on the use of legislative history:

> A committee report does not have the force of law, nor does this statement purport to explain ambiguous or vague language appearing in the statute. "While a committee report may ordinarily be used to interpret unclear language contained in a statute, a committee report cannot serve as an *independent statutory source having the force of law.*" *International Bhd. of Elec. Workers Local Union No. 474 v. NLRB,* 814 F.2d 697, 712 (D.C.Cir.1987). "[A] cardinal principle of the judicial function of statutory interpretation is that courts have no authority to *enforce* principles gleaned *solely* from legislative history that has no statutory reference point." *Id.*

*United States v. Thigpen*, 4 F.3d 1573, 1577 (11th Cir. 1993). Therefore, this Court will not consider the Senate report on CAFA, and will apply the traditional burden, requiring Defendants to show by a preponderance of the evidence that the amount in controversy has been met.

B.   *Defendants' Amount in Controversy Evidence*

The Defendants have submitted the affidavit of Tarleton David Williams, Jr., which contains data from Aetna's pharmacy department showing that Aetna paid over $20 billion to U.S. pharmacies for all prescription drugs and adjudicated more than 300 million pharmacy claims from 1999 to 2005. In addition, Defendants have submitted the declarations of JoBeth Levy, Aetna's Business Systems Manager responsible for pharmacy transaction reporting, and Frederic Curtiss, a pharmacoeconomics expert. These declarations show that, taking all allegations in the Complaint as true, the amount in

controversy would be approximately $7,195,000 just for 2003 through 2005. The Court finds this evidence sufficient to meet Defendants' burden of showing that the amount in controversy exceeds $5,000,000.

## IV.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1. The Motion to Remand (Doc. # 10) is DENIED.

2. The Motion for Conditional Leave to Conduct Limited Discovery Related to Plaintiff's Motion to Remand this Action to State Court (Doc. # 14) is DENIED AS MOOT.

3. The Motion for Hearing and Oral Argument on Plaintiff's Motion to Remand to State Court (Doc. # 15) is DENIED AS MOOT.

DONE this the 14th day of April, 2006.

        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE